Good morning, Your Honors. We appeal to the Court of Craig Anderson on behalf of the Correctional Officers of Spousal, Kimball, Gray, and Jackson. I would like to reserve two minutes for rebuttal if I may. This case involves being custody jailed before the District Court failed in granting the officers qualified immunity. In denying the officers qualified immunity, the Court again defined the exerting established law in a high level of generality and failed to identify a case where the corrections officers, acting under similar circumstances, have been held to have used objectively unreasonable force. The parties agreed that the issue for this Court, or the primary issue, is whether it was reasonable for Sgt. Osteazo to keep one knee on Mr. Sposal for 90 seconds. Well, District Court, I don't know if the parties, I don't find that agreement in the briefs. What I see in the briefs is the argument that having three officers sitting on top of the deceitful or conscripted time after he stops targeting is excessive force. Okay, so the issue there is whether it is reasonable to restrain someone for 90 seconds after the individual is handcuffed or paralyzed. Oh, that one's restraining. That one's restraining. With the manner to make the argument. What the District Court and the Plaintiff are both attempting to create is the issue or fact, a legal finding, that what someone has done with this deceptive force is, per se, unreasonable to keep force on an individual. No, no, they're trying to, they're arguing that there's a question of fact. So the question is, in this case, whether they've introduced sufficient facts to get control of the community, which is two problems, right? Yes. One constitutes excessive force. The other one is reprisal. Yes, that's right. So tell me why one so does not, if you're large men, why does it not be excessive use of force put aside for the establishment of a person? Okay. The three large officers after somebody who stops targeting, which is a terrible thing to do, shows, for a minute and a half to continue, and it goes to be like four or two minutes, and you continue to make the argument for the man, which is sitting on top of this person. In a way, you get farther and farther confused. Okay. What I was, it is that, according to the videos, there are two individuals who must be changed. There are two officers that are placing weight on the reprisal barrier, and it seems there's a lot of us. The reason it is not unreasonable is because this isn't a jail sentence. Okay, so if you look at the other positions, you can see it keeps it strong, right? There are police officers in the field, so there is no threat or no concern about group violence or other wrongdoers or other participants in the field. And so here, he says, Well, why is that? I don't understand that. Once you're past worrying about the deceitful because he's passed out, why does the use of group violence justify continuing to sit on the table? Well, people at first when I was submitting it didn't know he was passed out because the minute that they had picked up the officers, I was going to send an officer to go lock down the other inmates. The reason is because this is a psychiatric unit, so by nature, psychiatric inmates are unpredictable. There are dangers of themselves for others. You've nudged and nudged, and why wouldn't one want to restrain the other inmates? Once you have been conscious and not struggled using the evidence, at least keep your eyes on the person on the ground, why is it necessary that the officers continue to sit on the table in order to keep the other inmates? Okay. This is not just sitting on him. It's been in the video cells, and Sarge tells me also that one other officer are placing one knee, which is not putting the full body weight as the inmates are. There's no weight on them. They're keeping him restrained. And I really believe that that's the video cells. They didn't realize the meaning that he was out. With the evidence, at least take it in the light most favorable to the others. So it indicates that the force that they put on him wasn't causing it. I know you dispute that. But that's a question of security. So that is true. And so the issue is what they're attempting to do is to keep that weight on with this fellow for 90 seconds while Sarge tells me how to organize the new officers that he called in. He's also involved in a significant three-minute struggle that didn't happen in court. And so these officers are tired. There are potential fatalities that probably most of them are. One of the reasons we didn't rely upon a three-minute challenge is because some of us find a lot of times when we see a three-minute struggle, we don't see people in the beginning of the instance. At the end of each instance, at least 90 seconds of that is when the struggle is over. Well, that's a very good point. It's a very good point. I don't want to talk. Yeah, but it's a good point. This is actually on the state agenda, so if you're Jewish people. Okay, well, it's in their briefs as well. And so I thought I accepted their faxes as accurate trumps. But at any rate, it is a struggle. And it shows immediately when it comes on that Officer Dixon has to be assisted up because he was so exhausted from the struggle. So we have that added element here that these officers had to fight to get him in the handcuffs and protect him against the same drug. And then once they get him in the handcuffs, we have submitted that the straight chair and the other officers, which the video service search and hospital is immediately correcting them for a policy to get a straight chair in place and to follow a policy to get him secure. But we're not dealing here with these mainstream. In other words, I'll stipulate that the officers did their work. Perhaps the campaign didn't even describe it. It didn't even cause it for them. This leads to, of course, the question of can people have the same treatment? Well, I think Kingsley settled that once in Toronto, Kingsley v. Hendricks in the Supreme Court in 2015, where they said it's an objective reasonable standard. But in addition to the Fourth Amendment standards, you know, Graham and so forth, you also take into account the ideological interests of the Chief Constable that they have to follow in their policies. So let me ask the question I asked before a different way. I don't want to monopolize this. But what's the ideological interest in continuing to ban the businesses in the ground once he has become unconscious and is handcuffed again? Okay, first, hang on. I'll go back to they didn't know he was unconscious as the video shows. The second of all, they had to lock down the underneath resources. How do you do that under control? Well, I would say the video shows it. But once they get you under control, the search and hospital immediately begins to perform other law enforcement functions. So Chief Constable can get up and lock down these underneath resources, selling them these new illegal commodities. Who stuffed his people into that? Stuffed his people, but not the full body. I mean, they're not on his neck. They're kneeling on him. But what these do is they're not being callous, and they're not recognizing the interests here. And that's why I'm saying they're being callous. I'm not trying to make a good judgment. The officers surely did mean to kill him. I mean, the handheld video shows what they did for him when he was in distress and the woman who was on the table was a traitor. Yeah, I mean, that's what the court hears. Well, I think it is in the respect that what search and hospitals was trying to do is get everybody in place to reorganize this. We've got retired officers who have just been involved in a struggle. We've also got fresh officers in there. They do have a legitimate concern, and it may be minimal to me. You keep saying they're very tired. That reduces their obligation to conform to the procedure. Why do you keep mentioning that? Well, because I think there's case law there that says officers, you know, they don't have to exhibit superhuman judgment. We're not going to tell you. We're not going to superhuman judgment. You say they're tired so they can't do what they're supposed to do. Is that a proper rule? It can't. These officers are entitled to secure the statement. And it may be a bit of both. Well, that's a great question. Because I'll carry that one. Okay. And I think that would be reasonable. Well, I think it goes into the totality. Well, they look real tired, so that's good enough. No, I think it goes into the totality and the circumstances as to what these officers were doing once he was restrained and because he would be no longer a threat, is that they were still performing legitimate law enforcement tasks. They were not, they were aggressive. But maybe they were doing it on the part that they were real tired, right? Could you keep working? Well, they were organizing the newly incoming officers. They have a policy that requires whenever you put someone in a restrained chair, that it's video. So Sergeant Mosby also was aware of the newly incoming officers and that's what they were trying to do was send a scene out to say they put you in a restrained chair. Now, I think before I focus on you, part of my brief is that there's no clearly established law that would have told these officers that what they were doing was unconstitutional. You don't think drama does include established law? I don't think drama gets really close on one of these cases. And as your Honor, I'm very well aware of the Supreme Court has issued numerous decisions on what is established and what is not established. Just last month, they issued a warning post in Poland. And what is clearly established is a case that included these officers on fair warning. When you look at drama, you see all the jokes in it. There's no threat of other individuals becoming involved like we did here with the psychiatric unit. Drummond was taken into custody to protect himself. Mr. Solano was taken into custody to protect the entire psychiatric unit. Mr. Drummond offered no resistance. He was immediately knocked to the ground and handcuffed. There was no struggle. The officers then put their full body weight and their both knees on his neck and then were laying there for 20 minutes. And I think the issue is, is that the difference was legislative or not? The officers did not use excessive force in bringing the deceased to the ground and orchestrating it. So I'm really looking at the period after which they remained him, where they remained, placing force on him after he was restrained, whether or not they knew he was going to be in custody. If this were 20 minutes, would Drummond be a case of no? Yes. So your real difference with Drummond has to be that it's only from time to time. But also, the Drummond wasn't struggling. No, no, I've kept you open. I've said you're both scot-free up until the time he's not struggling. Okay, so, you know, I think it is whether they unnecessarily prolonged the waiting period. So if Drummond does stand for that proposition, doesn't it, that if after the need to restrain has ended, you continue to do it for an unnecessary long period, that's a constitutional violation? In Drummond, there was no allegation that the officers were performing any other law enforcement purposes. They were just sitting on his neck. I think here, because of the video, it's a little bit, you know, the person who was directing other officers, he was still working. But that's why this question is important. It seems to me it's hard to argue that one is performing law enforcement purpose when sitting on the back of a restrained man, or at least the evidence suggests is uncharged. I can say law enforcement is the first thing about running around and doing something, even keeping and restraining a person, other than sitting on his back. But what's the law enforcement purpose to place this force on or to subconscious? Well, it's basically to prepare in case it's going to be possible to understand how he was not, but as 20-20 hindsight, to be prepared to handle any user safely to the end, because it's no longer a threat. It's to minimize the threat in the hands of individuals who remain a threat. In Drummond, he was also clocked on his keyboard time. Here, they didn't use any other means to inform his people. He's a business model. He didn't know clock time. Well, they were holding his feet. They were holding his feet, but it wasn't clock time, which is attaching the book to the handcuffs, which is allowing him to do it informally. Can I ask you a factual question? I want to be clear about it. I think you answered it. With the other officers, what I said was what looks like a wheelchair, that's a restrained stand, which is so they think the intention was to take the decedent off the ground and put him into the chair to restrain him. Yeah, to restrain him. To restrain him. That's why they're fitting the handcuffs. One other question about the video. The officers testify that one officer goes in, talks to the decedent, comes back, and talks to the other decedent. Is that first incident, is it along the video, or is it out of the video? No, if I watched the video the first time, I completely identified the officer should have been in. It's when the three of them come together. It's not on the video. It's not on the video. Okay. And so I think when you compare Drummond with Gregory versus Coney Valens, the problem with Gregory is it doesn't give a timeline. But I think that it's a little, I mean, it's common sense that the officers of Gregory have to make some sure of the individual. He waited a few seconds or two, I mean, to say that the minute you get somebody that kind of took the whole thing over, when there are still other problems that could arise. I just think this case is somewhere along the scale between Drummond and Gregory Valens. The result of this, of course, recent orders, it's not clearly established, but if so, the rest of the officers who are also maintaining the facility seem to think it would be per se unreasonable to keep someone detained for 90 seconds while performing other law enforcement functions. If you wanted to switch it up for a little bit, I'm watching for you. It's a good time for you. Yeah, I'll keep it right here for safety questions. Thank you. Thank you. We have two counselors here. Are you both currently? Yes, sir. I would like to see maybe four or three, four or five minutes of the officer detained. Okay, go ahead. Why don't you make sure you watch the clock? I'll try to remind you. Thank you. This is for Mitchell Mason. You're not allowed to put a state or police motto in this matter at all. Your Honor, the appellee is asking this court to resolve that liability for causing the torturous death of a police motto despite the officers, the involved officers, having been previously trained not to use the force they use in the manner they use. So, Mr. Scott. Well, just like your opponent, it seems to me, you're arguing more than you have to prove. The real question is whether or not the force was possessive, whether or not they were trained or not trained. And that may be an issue as to the liability of the, you know, as an ally, but it's not an issue as to the liability for the officers. Yes, I do think it speaks to the torturous act, because you only established an element of it. But just looking at whether the force was excessive, I mean, once Mr. Small was in handcuffs, on the ground, and numbered by officers, you've seen the video of multiple other officers coming. It's also undisputed that once, you know, once the motto was handed out, all the other inmates were immediately to go back to their cells. So let's, can we focus on the video that you, that we're not letting you play because we're the officers. What do I just enforce to become excessive? So, I'm talking about the video where they're taking him down, getting him on the ground, putting the handcuffs on. In my view, I think his response, in your answer, is not a period of time when he was in and using excessive force. No, so, there was some level of force, which is proper. But that's not what the district court is about. The district court is focused on the time he has to take him, is that correct? Well, the district court is, Archibald, in the three minute struggle, in general, we've seen it. There's also the initial takedown, which, of course, the, there's other references to the original takedown. We've seen the video. Well, whatever it is, I mean, as I was saying, I have a hard time finding that as excessive force. You have somebody in a psychiatric unit, he's, when they come out, he's resisting in some way, they take him to the ground and try to immobilize him. But so that is not, that period of time until he's restrained is not excessive force. How long have we been dealing with the time that people, if anybody, understand? So, the way I can figure that is once he's taken to the ground, there's a minute and a half, 90 seconds. That's about what I said. He's being taken to the ground to where he's standing. So there's 90 seconds on the ground, but not handcuffed yet. Then once he's handcuffed, there's an additional 90 seconds. I think it's three minute. It's a three minute. When you walk by sometimes, he's on the ground for 90 seconds or so, and there's those people on his back. And he's almost made by jerky. He's sitting there for 90 seconds. I'm telling you, if it were 12 seconds, he wouldn't be here. If it were 20 minutes, he wouldn't be here. So if we're trying to figure out the number in between, that's what we're seeing is sort of an established number. So there is 12 seconds, but in the totality of circumstances, there isn't going to be a set time that you know, it's always, you know, get off in 60 seconds. He's going to stay out longer than 60 seconds. It's not going to be hard. It's hard to deal with that. This court in 2003, because there's nothing said, it was unconstitutional to have multiple officers remain on a prone, restrained individual. Although if I may, in total restraints, the 20 minutes, the court did note that the hollow restraints were put on for his legs the whole time until the final minute. And within a minute of the feet being held up towards the buttocks like they were against the body, within a minute, they noticed that he was unconscious. So all those officers that already have three stops in their state, that basically ends in the other. Mr. Stiletto was in, he was unconscious, it was clear, it's hard to say the video was clear. What we can tell is he's not looking. Right, because we can see that his feet were moving behind the table and his body was moving and now he's not, but we can't realize until the video that he was unconscious and that he had a legendary moment. When the handheld video comes in, the full video, the full video, yes, it's totally unconscious at the point that the handheld video comes in, but then your timeline, that's about 90 seconds after he was handcuffed and he's not resisting. I don't know, it's a question of how much reality or how much resistance there was in the first 90 seconds that he was unconscious for the first 90 seconds, but this court also, in 2013, in the Amnesty case, which was cited in our brief, the district court was cited to for clearly establishing that in absent that there was a one minute seven second post-handcuffing or may not in absent for a minute and seven seconds post-handcuffing and the court found a violation. What case was that?        or was he resisting? In absent was he handcuffed or was he resisting? In absent was he handcuffed or was he resisting? In absent was he 六 like we have here. The court also determined in absent that it wasn't clear from the video that they had whether there was some form of resistance post-handcuffing. However, the court said it was clearly established the defendant's use of body compression to restraint a prone and bound suspect was in all position to offer meaningful resistance when finally he was sentenced by drug inmate which was five years earlier in 2003. Furthermore, principal attorney Tucker versus Las Vegas Metropolitan Police Department specifically put this law enforcement agency on notice that they keep multiple officers on the back  restrained defendant. Yes, absent,  unpublished. Well, what about still published case? Strongly not published. Strongly unpublished. Yeah. Okay. Well, then, then, then, then, then, then, then, then, then, then, then, then. Then, then,  then, then, then, then, then, then, then, then, then. And since then since legal obligations to file an appeal on a case and they need to condition your breath. I would submit that officers have been trained to deal with high risk cases and the ability to price the court best that you can secure and stabilize  scene. However, the major distinction is that the officers were not continuing to push down the court. Any other case that could be distinguished from this case would    where the officers were not pushing down the court best that you can secure and stabilize the scene. I would  that the officers were not continuing to push down the court best that you can secure and stabilize the scene. I would submit that the officers were scene. I would that  officers were not continuing to    court  that you can secure
judges: Tashima, Hurwitz, Adelman